FIRST NATIONAL BANK OF YALE *v.* HARNDEN.

1. FRAUDS, STATUTE OF—INTEREST IN LANDS—PAROL AGREEMENT.
A parol agreement between a son and his father and stepmother whereby the son worked an 80-acre farm, the title to which was in himself and a brother subject to a life estate in the parents and survivor, whether it be called a trust or power over or concerning the land, or an estate or interest in lands, or a lease exceeding a year, was void under the statute of frauds (3 Comp. Laws 1915, § 11975), and at most was good only as a lease for a year.

2. CREDITORS' BILL—AMOUNT DUE JUDGMENT DEBTOR—INFERENCES.
A creditor's bill, filed to reach assets of a father in the hands of a son who worked a farm for the father and stepmother under a parol agreement with no definite time

See notes in 15 L. R. A. (N. S.) 330; L. R. A. 1915E, 563.

of tenure or payment to give them their support, where nothing was shown or inferable as due, was properly dismissed.

3. FRAUDULENT CONVEYANCES — RESERVATION OF LIFE ESTATE — CREDITORS' BILL—IMPUTATION OF FRAUD.

No fraud in the conveyance of a farm from parents to a son, reserving a life estate, can be imputed to them on suit by judgment creditor's bill for a debt incurred by the father 15 or 16 years after the conveyance.

Appeal from St. Clair; Law, J. Submitted October 18, 1918. (Docket No. 93.) Decided February 7, 1919.

Judgment creditor's bill by the First National Bank of Yale, Michigan, against Andrew J. Harnden and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Jay B. Weymouth,* for plaintiff.

*C. F. Gates,* for defendants.

STEERE, J. On November 2, 1899, defendants Andrew J. Harnden and Mary, his wife, conveyed to defendant George Harnden by warranty deed the S. W. ¼ of the S. E. ¼ of section 35, town 10 north, of range 14 east, in the county of Sanilac, for an expressed consideration of one dollar, with the following reservation:

"It being especially provided that the said parties of the first part hereby reserve the entire use, profit, possession and control of the said premises for and during their natural lives, jointly, and also during the life of the survivor. It is also especially provided and agreed that the said party of the second part shall pay all taxes and assessments against said premises; also agreed that the said party of the second part shall clear said premises from all existing incumbrances and shall keep the same clear with the exception of a mortgage of $250 to be made and fully paid according to its terms by the said party of the second part."

See note in 42 L. R. A. (N. S.) 1213.

On the same day they conveyed to Eber Harnden by warranty deed the southeast quarter of the northeast quarter of the same section for an expressed consideration of one dollar with the same reservations and recitals above quoted. These instruments were duly recorded in the office of the register of deeds of Sanilac county.

Andrew J. Harnden is the father of the grantees George and Eber Harnden. Mary J. Harnden, whom he married not very long before the date of these conveyances, is his second wife and their stepmother. He was at that time about 60 years of age, and she about 40. The land conveyed as stated was for many years owned, cultivated and occupied by Andrew J. Harnden with his wife and family, until his children were grown and his home broken up by the death of his then wife. He thereafter lived at the old home with his son George until his second marriage, in 1899, when he went to live with his present wife, who then ran a store and had a house in the village of Yale, some ten miles distant from his old home farm, which George occupied and worked.

What, if any, occupation Andrew J. Harnden followed or what other resources he had after 1899 does not appear, but in September, 1915, he gave a promissory note for $75, due September 1, 1916, to William McIntyre of Roseburg, which was sold to plaintiff before maturity, and on April 1, 1916, he gave a note to the Yale State Bank for $22.60, due six months after date, in renewal of a former note, which was sold to plaintiff prior to April 16, 1917.

On April 16, 1917, plaintiff brought suit upon those notes in a justice's court of St. Clair county against defendant Andrew J. Harnden, recovering a judgment of $106.83, with $3 costs, and on April 26, 1917, removed the judgment by certified transcript to the circuit court of St. Clair county. Execution was then

issued out of that court, on the transcript of judgment, running to the sheriff of Sanilac county, who, on the 30th day of April, 1917, levied on the right, title, and interest of Andrew J. Harnden in and to the 80 acres above described, recording said levy in the office of the register of deeds of Sanilac county.

Certain garnishment proceedings were also had in the circuit court of St. Clair county in which it is claimed to have been shown that the interest of defendants Andrew J. Harnden and Mary, his wife, in said premises, though evidenced by a life lease reserved to them in the deeds, was in fact and effect by understanding of the parties only a mortgage by George Harnden to secure the performance of a contract to support them for life; whereupon said levy was discharged by the sheriff of Sanilac county and the execution returned *nulla bona,* as was also an execution issued to the sheriff of St. Clair county in August, 1917.

On October 6, 1917, plaintiff filed this bill of complaint in the circuit court of St. Clair county as a judgment creditor's bill to reach the proceeds from defendant Andrew J. Harnden's interest in the Sanilac county land. Defendants duly answered issuably, claiming amongst other things that whatever rights in said land were reserved in the deeds of 1899 were joint between Andrew J. Harnden and Mary J. Harnden, and therefore not holden for the debts of either of them separately.

The relief prayed for in plaintiff's bill is an accounting between Andrew J. Harnden and wife and George Harnden, that George Harnden be decreed to pay the judgment and costs to plaintiff if the sum he is shown to owe his father and stepmother be found sufficient; and if not that he be decreed a trustee for plaintiff's benefit of any future sums which may become due from him to his father and wife until the accumula-

tion thereof is sufficient to pay the judgment, and that he be restrained in the meantime from making any payments to Andrew J. Harnden and wife, or either of them, until such judgment is satisfied.

Upon the hearing a transcript of the testimony of George Harnden as garnishee defendant in an action by plaintiff against his father to recover the debt involved here was introduced in evidence against the objection of defendant Mary J. Harnden that it was taken in proceedings to which she was not a party nor in any way interested. The transcript showed that he then testified he lived on the 40 acres deeded to him as above described and there never was any written agreement as to his occupation and use of the farm, but when he went on the place and took charge of both 40's his father told him to "go on and work the place and all I want is a living, you can see I am taken care of"; that at first, while his father was living on the farm before he married again, the arrangement did not of course apply to his second wife. Of the situation after that event he said:

"I have always worked both 40's and gave my father and mother their living off them. I agreed to do that at the time the deed was signed in 1899. I have kept no record of what I have paid my father during those years. I don't think it would be $500 worth of stuff. * * * I never kept any account of it. No bargain was ever made as to what I was to let him have. * * * I am not supposed to be paying rent for the land. I took title to the property and am supporting my father and mother for it. I am to keep them as long as they live."

He also said:

"My father gets his living from me in lieu of rent. * * * I pay him in everything, some money and some provisions."

His conclusions as to the nature of their relations, on suggestive interrogation of counsel, were as follows:

"*Q.* Then the reservation of the use, operation, possession and control of each of these 40's reserved in the deed—that has always been regarded by you as security for his living off the farm, is that right?

"*A.* Yes, I have always ever since I have been on the place and I expect I will yet, if I went off the place I would keep him."

The records of the Yale State Bank, in which Andrew J. Harnden had a small account at times, show that during the years 1914-15 a total of $283.64 was deposited to his credit by checks from George Harnden.

In dismissing plaintiff's bill the trial court said in part:

"If the situation is such that defendants Andrew J. and wife have lost their life estate and that the only interest they now have in the land is in the nature of a lien or mortgage to secure their support, such interest would not be subject to execution, levy and sale. *Chandler* v. *Parsons*, 100 Mich. 313. Plaintiff's attorney contends that this is the situation. But I fail to understand how the legal relation that the defendants bore to one another under the deed of November 2, 1899, could be varied or altered by parol or by a long continued custom. After the deed was made and delivered, defendant George was the owner of the reversion, and the father and stepmother, the other defendants, were the owners of the life estate. A life estate is a freehold and cannot be conveyed by parol or in any other way than by a written instrument. Defendants Andrew J. and wife are now the owners of a life interest in the land in question, as much as they were when the deed was made and delivered."

Plaintiff's counsel say in their brief:

"In this we claim he is in error. It must be borne in mind that at the time these transfers were made they were made with the intention on the part of Andrew J. Harnden and wife to part with the title to said land for all time, reserving a life lease, which as we have pointed out above, was nothing more or less than

a mortgage to secure the performance of the agreement on the part of defendant George Harnden to support them for life. They did not own a life estate absolute, it was only operative in case the defendant George Harnden failed to support them. * * * It is the same proposition as a deed absolute in form, being given as security for the payment of money or the performance of another obligation. In case of the payment of the money, or the performance of the obligation, parol evidence is always admissible to show the true condition and to effect a redemption."

The basic infirmity of this proposition is that George Harnden never gave his father and wife a deed absolute in form, or any other instrument in writing as security for payment of money, or performance of any other obligation. They conveyed to him and his brother, by separate warranty deeds, each a 40 acres of land, reserving to themselves a life estate, "jointly, and also during the life of the survivor," imposing upon each, separately, as to his 40 acres, payment of taxes, a $250 mortgage, or his half of a $500 mortgage upon the 80 acres, and an obligation to keep the same clear from incumbrances. Each son had a fee title to his property, subject to an incumbrance of $250, which he was obligated to pay, and burdened by a life estate under which Andrew J. Harnden and wife had the right of possession, use, and control of the property during their lives. Whatever further arrangement they made with George Harnden under which he took possession of and worked both 40's rests in parol. Whether it be called a trust or power over or concerning the land, or an estate or interest in lands or a lease exceeding a year, as the testimony seems to indicate, it was void under the statute of frauds (section 11975, 3 Comp. Laws 1915), or at most only good as a lease for a year with unliquidated rent contingent on the necessities of the parents for that year. At the end of the year George could quit or

they could dispossess him, regardless of how faithfully he had performed during the year.

This is a bill in equity filed in St. Clair county claiming under a parol agreement a denied construction of the reservation of a life estate in a warranty deed to lands located in Sanilac county, by which it is contended that, under conditions shown, the only interest Andrew J. Harnden and wife have in the land is their support for life "analogous to an annuity," as to which an accounting is prayed for, a trusteeship in George Harnden asked, and that he be enjoined from any payment to his parents for use of the farm. His possession and use of the land is but as a tenant under life tenants who own a freehold interest in the land to the extent of an estate for life carrying the right of possession, use, and income of the property so long as either survives. His right of tenancy rests in parol and whether it be at will, sufferance, or from year to year is unimportant, for in any event it can soon be terminated by either party. The rent is limited, so far as any agreement is shown, to the indefinite amount of the parents' needs, with no fixed time of tenure or payment, and nothing is shown or inferable as due. He bore no trust or contract relations with plaintiff, and it certainly cannot be claimed that in this proceeding fraud is imputable to any of the defendants by reason of the conveyances from Andrew J. Harnden and wife to the two sons given and duly recorded in 1899, some 15 or 16 years before Andrew J. Harnden incurred the debt which plaintiff is now seeking to recover.

We find no occasion to disturb the conclusions reached by the trial court and its decree dismissing plaintiff's bill is affirmed, with costs to defendants.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.